## STATE v. LOUIS HERSVITZ.[1]
## SAME v. MORRIS ROSEN.

June 18, 1909.

Nos. 15,916, 15,932—(29, 30).

**Receiving Stolen Goods — Evidence of City Ordinance Admissible.**

A city ordinance requiring pawnbrokers to keep a registry of all goods purchased and of loans made, and to report the same to the police department, is admissible in evidence as bearing upon the guilt of a pawnbroker, charged with receiving stolen goods, who fails to keep complete registry or report.

**Same — Against Pawnbroker's Clerk.**

Such ordinance is admissible in evidence for such purpose as against a pawnbroker's clerk, charged with receiving stolen goods, who, in the absence of the employer, purchases goods, makes loans thereon, and keeps the registry required by the ordinance.

**Verdict Sustained by Evidence.**

The evidence is sufficient to warrant the jury in finding that appellants, who were pawnbroker's clerks, were guilty of the crime of receiving stolen goods.

Defendants were convicted in the district court for Hennepin county of the offense of knowingly receiving stolen property and were sentenced to be imprisoned in the state reformatory. Each defendant moved for a new trial and from orders, Simpson, J., denying the motions, they appealed. Affirmed.

*Hall & Kolliner,* for appellant Hersvitz.

*Geo. B. Leonard,* for appellant Rosen.

*George T. Simpson,* Attorney General, *Al. J. Smith,* County Attorney and *John F. Dahl,* Assistant County Attorney, for the State.

[1]Reported in 121 N. W. 905.

LEWIS, J.

Appellant Rosen was indicted and convicted for buying and receiving, on the seventh day of March, 1908, at the city of Minneapolis, certain personal property of the Palace Clothing House, viz., six pairs of pants, of the value of $30, knowing the same to have been stolen by the party from whom he purchased them. Appellant Hersvitz was indicted and convicted for the same offense, alleged to have occurred on the second day of March, 1908; the property being five pairs of pants, valued at $25. These two men were clerks in the employ of one Feinstein, who conducted a pawnbroker's shop in the city of Minneapolis. The principal witness on behalf of the state was Nolan, the party who stole the goods from the Palace Clothing House. He testified that he took from thirty-five to fifty pairs of pants and sold them all to appellants; that he did not remember the exact number he took at any particular time, but that he made the thefts on probably ten or eleven occasions between February 1 and March 7. The evidence discloses that, a demand having been made on Feinstein and appellants to produce the stolen goods, they at first accounted for only five pairs, but upon further investigation by the officers of the police department a total of thirty-six pairs were found, nineteen pairs of which were concealed in suit cases. Nolan testified that in taking the goods, he went into the Palace Clothing House, watched his opportunity, took a few pairs at a time, and concealed them under his overcoat, and then went to Feinstein's pawnshop and sold them for one dollar a pair. The goods were new, and had the marks and tags as to size which had been put on in the store.

A certain city ordinance provides that pawnbrokers must be licensed, and that they shall keep a book in which shall be recorded all purchases of goods and loans made thereon. The ordinance also makes it the duty of every pawnbroker and seller of secondhand goods to make out and deliver to the chief of police, every day before the hour of noon, a correct copy from the registry book of all personal property received or bought, with the description of the person by whom it was sold or left in pledge. The registry book in Feinstein's store showed that from February 1 to March 9 they had bought some of the trousers and loaned money on the rest, amounting altogether to thirty-six pairs.

In the case against appellant Rosen, the court received in evidence the ordinance and the registry book for the period indicated, and also received evidence as to what reports had been made from the store to the officer known as the pawnbroker inspector, whose business it was to receive such reports daily on behalf of the police department. In the Hersvitz case the court received the ordinance and the registry book in evidence, showing the amount of purchases and loans during the time stated, but ruled out all evidence of reports made by the shop to the inspector between the first of February and the ninth of March, upon the ground that they were not in his handwriting, that the evidence did not show it was his duty to make such reports, and that it was incompetent, irrelevant, and immaterial. It was shown during the trial that Rosen was the chief clerk, in charge during the absence of Feinstein, the owner; that he had been employed there for over a year; that it was his duty to conduct the business of the establishment in all respects during the absence of his employer; and that he continuously purchased goods, made loans on the same, and, in the absence of the proprietor, made up the register and reported to the office, as required by the ordinance. Under such circumstances it is very clear that the ordinance was admissible in evidence to show what the duties of pawnbrokers were, and it was proper to follow that up with evidence to prove how Rosen performed such duties, as bearing upon the fact charged that he had purchased stolen goods.

Hersvitz had been in the employ of Feinstein about seven months, and his principal business was the jewelry department, and incidentally the clothing. He admitted that on at least two or three occasions he received pants from Nolan and paid for the same at the rate of one dollar a pair. It was shown that it was a part of his duty and that he took part in making up the register of goods purchased and loans made; but it was not shown that he ever made out the reports to the pawnbroker inspector. Upon this ground his counsel insists that it was error to receive in evidence the ordinance with respect to requiring the daily reports from pawnbrokers.

On first impression there appeared to be some merit in the point; but, having fully considered the evidence, we are of opinion that the ordinance was admissible, even as to Hersvitz. It is true the state attempted to show that his authority as a clerk was such that it was just

as much his duty and business to make up the daily reports to the police department as it was Rosen's; but in the opinion of the trial court the evidence in that respect was not sufficient. The ordinance was admissible as a foundation to define the duties of pawnbrokers, and its reception in evidence cannot be held prejudicial simply because the state did not prove that it was a part of Hersvitz's duty to make out the reports. No motion was made to strike out the ordinance, and the court was not requested to instruct in relation to its effect.

We are of opinion that the evidence of guilt on the part of Hersvitz, as well as Rosen, was clearly established, aside from the effect of the ordinance and the omission to report all the goods received. Although Hersvitz was second in authority, according to the testimony of the police officers he denied that there were any more goods in the store, when he knew that there were other goods concealed in suit cases and other places. The manner in which the pants were brought in was enough to show that Nolan was no honest dealer. He presented himself repeatedly with a few pairs of new pants concealed on his person, or wrapped in a paper, and disposed of them for one dollar a pair. Neither Rosen nor Hersvitz made any effort to find out who the man was, offering goods in that manner, and did not attempt to trace the origin of the goods, which they bought for one fourth or one fifth of their value. The plea that they supposed Nolan was a traveling man, offering samples for sale, was a lame defense.

Affirmed.